**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| NAOMI CHRISTIEN MORRIS, | ) |
| Plaintiff, | ) |
| v. | ) No. 06-CV-219-SAJ |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration,[1] | ) |
| Defendant. | ) |

## OPINION AND ORDER[2]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits. Plaintiff asserts that the Administrative Law Judge ("ALJ") erred (1) by failing to specifically set forth his rationale for not considering the request of Plaintiff's representative, during the administrative hearing, for a closed period of disability; (2) by posing a hypothetical question to the vocational expert which did not reflect all of plaintiff's limitations, both physical and mental, with precision; and (3) by not supporting his determination with substantial evidence. For the reasons discussed below, the Court **affirms** the Commissioner's decision.

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Naomi Christien Morris, was born December 18, 1960. [R. 65]. She was 44 years old at the time of the hearing. She claims that she is unable to work because of a improperly healed broken ankle, bipolar disorder, depression, and anxiety. [R. 76] At the

---

[1] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

hearing, she also claimed that she had problems with high blood pressure, her back, her hip, her knees, both ankles, her hands, asthma, and bronchitis in addition to her bipolar disorder, anxiety and depression. [R. 325-27]. She also admitted a history of substance abuse (primarily alcohol). [*E.g.*, R. 332, 335-38, 48-49]. Prior to 2000, Plaintiff worked as a janitor, a warehouse laborer, meat processor, and nursery field laborer. [R. 85].

Plaintiff filed for supplemental security income benefits by application dated June 30, 2003 (June 6, 2003 protective filing date). [R. 65-68]. Plaintiff alleged that she became disabled on March 29, 2003 [R. 65], the day after she broke her ankle. Plaintiff's applications were denied initially and on reconsideration [R. 46-47], and Plaintiff requested a hearing before an ALJ. [R. 54]. ALJ Gene M. Kelly held a hearing on February 10, 2005, and rendered a decision on November 22, 2005, concluding that Plaintiff was not disabled within the meaning of the Social Security Act. [R. 13-23]. Plaintiff filed a Request for Review of Hearing Decision on January 7, 2006. [R. 8], and the Appeals Court denied her request on March 10, 2006. [R. 5-7]. Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

-- 2 --

> engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

---

[3/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

-- 3 --

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ determined that Plaintiff's alleged impairments were "severe," but that none of them met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. [R. 21]. He found her testimony credible only to the extent consistent with a residual functional capacity for a wide range of sedentary work, and that there were a significant number of jobs existing in the national economy which she could perform. [R. 21-22]. Hence, he concluded that she was not under a "disability," as defined in the Social Security Act, as amended, at any time through the date of his opinion. [R. 22].

---

[4/] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

### 4. REVIEW

**A. Claimant's Request for a Closed Period of Disability**

Plaintiff's first allegation of error is that the ALJ failed to specifically set forth his rationale for not considering the request of Plaintiff's representative, during the administrative hearing, for a closed period of disability. [*See* R. 359-61]. Plaintiff's representative asked the ALJ to consider a closed period disability from March 29, 2003, through March 29, 2004. As grounds for the request, the representative referred the ALJ to medical records showing that: (1) after plaintiff was initially treated for her broken ankle, plaintiff did not present for any follow up treatment due to her confusion as to discharge instructions [R. 115-24]; (2) she had surgery for a bone graft and external fixation in August of 2003 [R. 164-65]; (3) doctors performed surgery again in December of 2003 to remove the hardware and fixater [R. 159-63]; (4) a doctor indicated in January of 2004 that plaintiff was able to walk with the aid of a walker [R. 160]; (5) claimant testified that she continued her therapy after that date[5]; and (6) a Residual Functional Capacity form dated April 8, 2004 shows that Plaintiff could only occasionally lift only ten pounds and frequently could lift only five to nine pounds [R. 183].

"In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (*quoting Pickett v. Bowen*, 833 F.2d 288, 289 n. 1 (11th Cir.1987)). "A 'closed period' of disability occurs when the starting and termination dates of disability are determined

---

[5] The transcript does not verify this statement.

simultaneously." Harvey L. McCormick, *Social Security Claims and Procedures* § 8:11 (5th ed. 1998); *see* 42 U.S.C. § 416(i)(2)(D); 20 C.F.R. §§ 404.1594, 416.994.

The ALJ did not state specifically that he had considered whether Plaintiff was entitled to a closed period of disability. However, he did discuss fully the medical evidence upon which he based his decision as to Plaintiff's ankle injury. He recited the evidence of her initial hospitalization and treatment in March 2003; her subsequent evaluation in June of 2003; her surgery in August 22, 2003 to apply hardware and a fixator to the ankle; her evaluation in September, 2003 after the surgery; her surgery in December 2003 to remove the hardware and fixator; and the x-rays taken of her ankle in January 2004. [R. 15-16]. He even referenced the June 2, 2004 report of Dr. Matthew Roberts, D.P.M., who stated four months after Plaintiff fractured her ankle that Plaintiff had post-traumatic arthritis, had not regained full function of the joint, and would ultimately require an ankle joint arthrodesis. [R. 16, 267].

The ALJ also took into consideration Plaintiff's pain allegations regarding her ankle injury when he evaluated her residual functional capacity. He stated:

> The record clearly documents the claimant's fracture of her left ankle and continued pain and limited movement,. She also has related left knee pain and said she had fallen. Limiting the claimant to lifting no more than 10 pounds and standing no more than 2 hours in an 8-hour day at 30 minute intervals should not cause excessive pain or place undue strain on her ankle or knees.

[R. 18]. The ALJ later explained that he did not discount all of Plaintiff's pain allegations, but that Plaintiff's failure to seek additional treatment for three months after her initial treatment for her fractured ankle did not present a "picture of a person suffering from chronic, severe unrelenting pain." [R. 19]. Further, none of her treating physicians placed

any functional restriction on her activities that would preclude sedentary work activity with the limitations set forth in the ALJ's RFC assessment. [*Id.*]

A similar issue arose in <u>Lowery v. Commissioner of Social Security</u>, 342 F. Supp. 2d 694, (E.D. Mich. 2004), and there, the court reasoned:

> "[T]here is no medical opinion in the administrative record that the plaintiff could not physically perform work within the light duty restrictions within any consecutive twelve-month period. To the contrary, there is evidence of the plaintiff's physical capability consistent with that exertional level within twelve months after his various surgeries. The finding of no disability for either an open or closed period, therefore, is supported by substantial evidence."

*Id.* at 700. As the Commissioner points out, even the evidence upon which Plaintiff relies to establish a closed period of disability is not supportive of her argument. The January 13, 2004 clinic note shows that Plaintiff said her pain was resolving and that she was able to walk with the aid of a walker. [R. 160]. It does not establish that she was unable to work at the time.

Further, the April 2004 RFC assessment indicates that plaintiff could occasionally lift 10 pounds and frequently lift and /or carry five to nine pounds. [R. 183]. The ALJ made that finding in his RFC assessment, and he included that in the hypothetical he posed to the vocational expert. [R. 18, 21, 354-58]. Even with that limitation, sufficient jobs were available in the national economy that Plaintiff could perform. [R. 20, 22, 355-58]. It would be futile to require the ALJ to specifically state that he considered and rejected a closed period of disability when he fully discussed the record, and the evidence upon which Plaintiff relies does not establish that she is entitled to a closed period of disability.

### B. Hypothetical Question to the Vocational Expert

The second error alleged by Plaintiff is that the ALJ posed a hypothetical question to the vocational expert which did not reflect all of plaintiff's limitations, both physical and mental, with precision. Specifically, Plaintiff argues that the ALJ's hypothetical question did not show that Plaintiff was using a walker to ambulate during the closed period that her attorney asked the ALJ to consider and, further, the question did not reflect the findings as to Plaintiff's mental state that became part of the record after the hearing. Plaintiff's first objection to the hypothetical is not valid because the medical evidence establishes only that Plaintiff was using a walker to ambulate in January 2004 [R. 160] – not that she continued to use it thereafter. More important, Plaintiff does not explain how her use of a walker would have changed the ALJ's RFC assessment, and thus, his hypothetical.

As to Plaintiff's alleged mental impairments, the ALJ indicated that he would obtain a consultative examination after the hearing. [R. 361-62]. Dr. John Hickman, Ph.D., examined Plaintiff on April 27, 2005, and August 17, 2005. He found that she had no limitations on her ability to understand and remember short, simple instructions, and no limitation on her ability to carry out short, simple instructions. [R. 302]. She had a slight restriction of her ability to make judgements on simple work-related decisions. [*Id.*] However, she had a marked impairment of ability to (a) remember and understand detailed instructions and (b) to carry out detailed instructions. [*Id.*] Dr. Hickman found a moderate impairment in Plaintiff's ability to (a) interact appropriately with supervisors, (b) interact appropriately with co-workers and (c) respond appropriately to work pressures in a usual work setting. [*Id.*] He also indicated that Plaintiff had a slight restriction for interacting

appropriately with the public and to respond appropriately to changes in a routine work setting. [R. 303]

After subsequent testing, Dr. Hickman found that Plaintiff had a moderate impairment in her ability to maintain attention and concentration for extended periods. However, he indicated that Plaintiff had either "no limitation" or "no significant limitation" in the remaining 19 activities listed under the following three categories:  understanding and memory; sustained concentration and persistence, and social interaction. [R. 311-13]. He opined that Plaintiff "continued to destabilize her mood by using alcohol . . . ." [R. 300, 309], but that Plaintiff was capable of managing any benefits she might receive in her own best interests. [R. 304-05, 310].

An ALJ is not required to recite the findings in an RFC assessment word-for-word when he poses a hypothetical question to the vocational expert and later relies upon the vocational expert's testimony regarding the number of jobs available in the national economy that a claimant could perform.  The ALJ carefully considered Dr. Hickman's opinions in his decision [R. 16-17], and nothing in Dr. Hickman's opinions contradict the ALJ's assessment that plaintiff's symptoms of bipolar disorder, depression, anxiety and substance abuse would limit her to work that involved simple, routine, repetitive instructions and limited contact with the public, coworkers, and supervisors. [R. 18, 22].  The hypothetical question that the ALJ posed to the vocational expert included that assessment. [R. 357].  It was not error for the ALJ to rely on the vocational expert's answers to that question, as it fairly incorporates the restrictions noted subsequently by the consultative examiner.  The ALJ's hypothetical properly reflects impairments and limitations that are

borne out by the evidentiary record," *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996), both before and after the hearing.

### C.  Substantial Evidence

Plaintiff's last assertion of error is that the ALJ did not support his determination with substantial evidence because he did not consider a closed period of disability and because his hypothetical question did not precisely reflect all of her restrictions.  As such, Plaintiff's assertion is merely a restatement or summary of the first two arguments.  The Court finds that the ALJ followed the correct legal principles and his decision in this case is supported by substantial evidence.   Accordingly, the Court **affirms** the Commissioner's decision.

It is so ordered this 25th day of September, 2007.

Sam A. Joyner
United States Magistrate Judge